Case 4:21-cv-05126-EFS    ECF No. 19    filed 07/22/22    PageID.796    Page 1 of 17

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 22, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DUSTIN B.,[1]

          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

          Defendant.

No. 4:21-cv-5126-EFS

**ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Dustin B. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ erred when considering the medical opinions as to Plaintiff's ability to forward reach, this matter is remanded for further proceedings.

///

//

/

---

[1] For privacy reasons, the Court refers to a social-security plaintiff by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

### I.     Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. § 416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.*

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

[8] *Id.*

[9] *Id.* § 416.920(a)(4)(iii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## II. Factual and Procedural Summary

Plaintiff filed Title 2 and 16 applications alleging disability beginning February 15, 2012.[17] His claims were denied initially and on reconsideration.[18] On request, ALJ Marie Palachuk held an administrative hearing by telephone and took testimony from a medical expert, a psychological expert, a vocational expert, and Plaintiff.[19] After the hearing, the ALJ issued a decision denying Plaintiff's disability applications and found:[20]

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.
- Step two: Since the application date of October 17, 2018, Plaintiff had the following medically determinable severe impairments: bilateral shoulder impingement (right greater than left), depressive disorder, generalized anxiety disorder, and ADHD.

---

[17] AR 235–42.

[18] AR 143–46, 149–54.

[19] AR 37–76.

[20] Only the findings pertinent to Plaintiff's Title 16 claim are listed, as Plaintiff did not challenge the ALJ's denial of his Title 2 claim. Because Plaintiff did not assert arguments specific to his Title 2 claim, such arguments are waived.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  > he can occasionally crawl and climb ladders, ropes, and scaffolds; never reach or lift at or above the shoulder level bilaterally; avoid concentrated exposure to hazards; able to understand, remember and carry out simple, routine tasks; predictable environment with seldom changes; no fast-paced production rate of work; brief and superficial interaction with the public.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a small parts assembler, collator operator, and electronics assembler.[21]

In reaching her decision, the ALJ found that:

- the examining opinion of William Drenguis, M.D., and the reviewing opinions of Darius Ghazi, M.D., Nancy Winfrey, Ph.D., and Kent Reade, Ph.D., were persuasive.

- the examining opinion of Nora Marks, Ph.D., the treating opinions of Gordon Hsieh, D.O., and Robert Whitson, M.D., and the reviewing

---

[21] AR 12–36.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

opinions of Greg Saue, M.D., and Debra Baylor, M.D., were not persuasive.[22]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to the Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[22] AR 25–28. The ALJ harmlessly referred to Dr. Hsieh as Dr. Heich. AR 26.

[23] AR 23–25.

[24] AR 1–6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[31]

### IV.   Analysis

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff asserts that the ALJ erred when analyzing the opinions from several medical sources, including Dr. Drenguis.[32] Plaintiff argues that the ALJ

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (cleaned up).

[32] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

failed to acknowledge that Dr. Drenguis limited Plaintiff to occasional reaching, while the Commissioner argues that the ALJ fully accepted Dr. Drenguis' opinion about Plaintiff's reaching limitations, which was that Plaintiff was limited to reaching at or above shoulder level but had no limitation reaching in front or to the sides. As explained below, the ALJ failed to meaningfully explain how Plaintiff's reaching limitations, as opined by Dr. Drenguis and Dr. Ghazi, which the ALJ stated she found persuasive, were fully incorporated into the RFC.[33]

1. Dr. Drenguis

In March 2019, Dr. Drenguis examined Plaintiff's physical abilities during a consultative medical examination.[34] Dr. Drenguis observed Plaintiff with full strength except "rotator cuff, right 4+/5, left /5. Strength of the right shoulder is limited secondary to pain" and with diminished abduction, adduction, and flexion

---

[33] "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). When incorporating a credited medical opinion, the ALJ's findings need only be consistent with the opined limitations, not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1271, 1223 (9th Cir. 2010). It is error for an ALJ to simultaneously claim to incorporate a medical opinion and yet, without explanation, omit relevant limitations set forth in that medical opinion. *See* SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996).

[34] AR 587–91.

with his right shoulder and diminished extension with both shoulders.[35] Dr. Drenguis also noted that Plaintiff's right shoulder was "diffusely tender with increased tenderness over the AC joint."[36] Dr. Drenguis opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently to chest height and could lift 20 pounds occasionally and 10 pounds frequently overhead.[37] Dr. Drenguis further opined as follows:

> Manipulative activities: The claimant is right hand dominant with his right upper extremity. He may occasionally reach and has no limits on handling, finger, feeling with his left upper extremity. No limits reaching, handling, fingering or feeling, he limited by his right shoulder impingement syndrome.

In addition, Dr. Drenguis opined that Plaintiff's ability to lift overhead was limited to the specified weights and frequency.[38]

Although Dr. Drenguis' manipulative-activities statement appears confusing to the Court, as it states that Plaintiff has no limits reaching but also that he may only occasionally reach and that he is limited by his right shoulder impingement, neither the ALJ nor the testifying medical expert, Dr. Ghazi, expressed a concern about understanding Dr. Drenguis' opinion. When summarizing Dr. Drenguis' opinion, the ALJ stated that Dr. Drenguis opined that Plaintiff was limited to

---

[35] AR 589 (The report does not list a strength finding for the left).

[36] AR 590.

[37] AR 590.

[38] AR 590.

occasional reaching because of a right shoulder impingement syndrome.[39] The ALJ found Dr. Drenguis' opinion "consistent with the overall record including the normal x-ray findings and largely benign physical examination findings" and supported by Plaintiff's "own reports to providers that his shoulder is doing well and has no physical health concerns."[40] Although the ALJ found Dr. Drenguis' opinion persuasive, the RFC did not limit Plaintiff to occasional reaching with his right upper extremity but did prohibit reaching or lifting at or above the shoulder level bilaterally.

The ALJ did not explain the basis for this deviation but the ALJ's questions to the testifying medical expert, Dr. Ghazi, at the administrative hearing sheds light on why the ALJ crafted the RFC without an all-encompassing occasional-reaching restriction.

2.   <u>Dr. Ghazi</u>

Dr. Ghazi, who is an orthopedic surgeon, testified that Plaintiff's left and right shoulder pain is caused by impingements, "a condition that develops where the space between the acromion, which is the top of the shoulder, and the top of the humerus diminishes; therefore, flexion of the arm results in pain, because it pinches on the edge of the acromion."[41] Dr. Ghazi advised that injections or

---

[39] AR 23.

[40] AR 26.

[41] AR 45.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

acromioplasty are used to remedy pain caused by shoulder impingement.[42]

Dr. Ghazi agreed with Dr. Drenguis' functional assessment, stating:

> [Dr. Drenguis] only imposes restriction on the use of [Plaintiff's] upper extremities because of his shoulder issue, and he cannot raise his arms above shoulder level, and they're pain producing. . .. [H]e can lift up to 50 pounds occasionally and 20 pounds frequently, so I tend to agree with that assessment.[43]

Dr. Ghazi also stated that Plaintiff's ability to "raise his arms above the shoulder level" is limited. Dr. Ghazi opined that Plaintiff's lifting restrictions included no lifting above the shoulder and that this was a bilateral restriction, though "more on the right [and] less on the left."[44]

> Plaintiff's counsel then engaged in the following exchange with Dr. Ghazi:
>
> Q   I just want to make sure I understood correctly. Dr. [Drenguis] said only occasional reaching. Is that what you concur with? He may occasionally reach and has no limits on handling, fingering, and feeling?
> A   Yeah, that falls into the limitation of the shoulder motion, which is limited to pretty much at the waist level, not raising above the shoulder level.
> Q   So if he was, like trying to sort apples, reach out in front, would that be limited to occasional –
> A   Yes.[45]

The ALJ then asked the following follow-up questions:

---

[42] AR 45.

[43] AR 46.

[44] AR 47.

[45] AR 47–48.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

> Q  Then if we're not talking about just reaching overhead, if we're talking about reaching in all directions, are you talking about where the arm would have to reach and fully extend or – to be occasional, or would he -- let's say if he's sitting at a desk, so his elbows and upper arms are basically close to his body, and it's just from the elbow to the hand that is reaching out in front of him, for instance to type on a keyboard or to answer a telephone, would he still be limited to occasional in those activities?
> A  No, he can fully function at that level, Your Honor. Only limitation he would have is aggravating his impingement by raising his arms.
> Q  Raising his arms. So if the shoulder has to go -- or I mean the arm has to go up above his shoulder or up above his shoulder level?
> A  Yes.[46]

When summarizing Dr. Ghazi's opinion in her written decision, the ALJ stated that Dr. Ghazi opined that [Plaintiff] was "limited to occasional reaching at or above shoulder level bilaterally" and that Plaintiff "would have no problems reaching in front of him (e.g., to answer a phone, use the computer, etc.), and would only be limited in reaching at or above shoulder level."[47] The ALJ found Dr. Ghazi's opinion that Plaintiff was limited to "occasional reaching at or above shoulder level" to be "well supported by the objective medical findings and the assessment of Dr. Drenguis," and the ALJ highlighted that Dr. Ghazi is an orthopedic surgeon and has [Social Security Administration] program knowledge.[48]

---

[46] AR 48.

[47] AR 24.

[48] AR 26.

The ALJ's summary of Dr. Ghazi's opinion is not accurate. The ALJ failed to appreciate that Dr. Ghazi testified that—in addition to not being able to reach above his shoulders—Plaintiff could only occasionally raise his arms—above the waist and below the shoulders—to reach out in front of his body to perform tasks like sorting apples. Common experience indicates that an occupation in which a person stands or sits on a stool and reaches out to a conveyor belt to sort apples involves a significant amount of raising and/or suspending of the arms as compared to typing on a keyboard or answering a telephone from a seated position, which generally involves minimal shoulder movement (as compared to elbow and wrist movement). When answering the ALJ's follow-up question about the keyboard/phone tasks, Dr. Ghazi was not deviating from his earlier testimony that Plaintiff was limited to occasionally lifting his arms to reach out in front of his body between waist and shoulder level. The ALJ erred by failing to appreciate and address each component of Dr. Ghazi's reaching opinion—or minimally to clarify Dr. Ghazi's opinion and what he considered Dr. Drenguis' reaching opinion to encompass when he specified that Plaintiff was limited to occasional reaching.

3.  The RFC and the Vocational Expert

An ALJ must include properly supported functional limitations in the RFC hypothetical posed to the vocational expert to ensure the identified occupations are

consistent with claimant's functional limitations.[49] Here, the vocational expert's testimony—and the ALJ's questions and statements during this portion of the administrative hearing—highlight the importance of distinguishing between the reaching demands for typing work versus work that requires raising the arms above waist level to reach.

When discussing Plaintiff's functional limitations with the vocational expert, the ALJ stated:

> Because of the bilateral shoulder impingement, I think I'm going to limit him a little bit more than what the doctor opined. I'm going to limit him to light work. No -- ladders, ropes, or scaffolds could only be done occasionally. And crawling can only be done occasionally. Reaching and lifting at or above the shoulder level should be never. Now, I was very specific and I asked the doctor very specifically if his arms were down at his side and he was reaching across a desk to answer a phone or to use computers if he would be limited, and he said no, so I – he only said the –above the shoulder occasionally, but I'm going to go ahead and just say never -- . . . for the reaching and lifting at or above the shoulder level.[50]

Based on this RFC, the vocational expert testified that Plaintiff could perform work as a small parts assembler, DOT 706.684-022; collator operator, DOT 208.685-010 and electrical assembler, DOT 729.687-010.[51]

---

[49] *Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006); SSR 96-8p: Assessing Residual Functional Capacity in Initial Claims.

[50] AR 71–72.

[51] AR 73.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

The vocational expert testified that, based on his work experience, he knows that these three occupations do not require workers to reach above their shoulders, but the workers do have to reach in front of their body or off to their side.[52] Consistent with the vocational expert's testimony, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* provides that these identified occupations require frequent reaching.[53] And common experience suggests that the reaching involved in each of the three occupations is more akin to apple sorting than to typing or answering a telephone. For these reasons, an apparent conflict exists between the identified occupations and the functional limitations opined by Dr. Ghazi and Dr. Drenguis—this conflict must be reconciled by the ALJ.[54]

Accordingly, the ALJ's nondisability finding is not supported by substantial evidence and is not free from legal error, and the ALJ's errors are consequential.[55]

---

[52] AR 74.

[53] https://www.lb7.uscourts.gov/documents/16-692URL12Selected Characteristics.pdf (last accessed July 22, 2022).

[54] *See Rounds*, 807 F.3d at 1006 (requiring the ALJ to reconcile any apparent conflicts between the posed hypothetical and the identified jobs before relying on the vocational expert's testimony).

[55] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (requiring the error to be consequential to the disability analysis).

Plaintiff argues that remand for immediate payment of benefits is required based on the vocational expert's testimony that if Plaintiff is limited to occasional reaching in all directions that "it's doubtful [one] would be able to sustain full-time work."[56] However, the record does not clearly reflect that Plaintiff is limited to occasional reaching in all directions. Notwithstanding Dr. Drenguis' occasional-reaching opinion, Dr. Ghazi testified that Plaintiff's shoulder impingement does not impact his ability to perform work that does not involve raising and suspending his arms and thus he could physically perform work that involved tasks such as typing and answering the telephone. Remand is required: the ALJ must supplement the vocational expert's testimony to determine whether there are available occupations that Plaintiff can perform given his functional limitations.

## V.    Conclusion[57]

The ALJ's errors require remand for further proceedings.[58] This remand only pertains to Plaintiff's Title 16 claim, which is based on the application filing date of October 17, 2018. Therefore, on remand, the ALJ need only reconsider whether Plaintiff became disabled on or after October 17, 2018. Because the ALJ's

---

[56] AR 75.

[57] Because remand is required due to the ALJ's errors as to Plaintiff's shoulder limitations, the Court need not address Plaintiff's remaining arguments.

[58] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

consideration of Dr. Drenguis' and Dr. Ghazi's opinions impacted his weighing of Plaintiff's symptom reports, the ALJ is to reconsider Plaintiff's symptom reports on remand, as well as reassess Plaintiff's functional limitations and supplement the vocational-expert testimony to clarify the effect of the assessed limitations on Plaintiff's ability to perform work in the national economy. The ALJ is to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 22nd day of July 2022.

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17